UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| Quaid McIver, | ) | CASE NO. 5:12CV1175 |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| KW Real Estate/Akron Co., LLC, et al., | ) | (Resolves Doc. 133) |
| Defendants. | ) | |

This matter comes before the Court on a motion for summary judgment filed by Defendants KW Real Estate/Akron Co, LLC ("KW") and Friedkin Companies, Inc. ("Friedkin"). Doc. 133. Defendants motion for summary judgment also seeks Rule 11 sanctions against Plaintiff. Plaintiff Quaid McIver has opposed the motion, and Defendants have replied in support. Upon review, the motion for summary judgment is GRANTED. The request for sanctions is DENIED.

**I. Facts & Procedure**

There are several underlying facts that form the basis of this lawsuit that the parties agree upon. McIver was a service porter for KW#1 Acquisition Company at its Lexus dealership in Akron, Ohio. On July 3, 2000, McIver suffered injuries while working that resulted in both his legs being amputated. Specifically, a Toyota that McIver had placed in the car wash on the premises moved forward and eventually pinned McIver against a wall that was outside the car wash. Those general facts led McIver to file a state court lawsuit and the instant suit. In his initial complaint, McIver named eight defendants: 1) KW, 2) Friedkin, 3) Atwell, LLC, 4) Ascent Automotive Group, 5) Gulf States Financial Services, Inc., 6) Auto Butler, Inc., 7) Regional

General Contracting, LLC, and 8) Toyota Motor Corporation. McIver's state court lawsuit was filed against KW#1 and ADA Architects.

Based upon allegations related to the vehicle involved in the accident, a Toyota, McIver filed a notice of tagalong case and this matter was sent for a period of time to multi-district litigation. It was returned to this Court on June 22, 2017. Thereafter, McIver dismissed all of the remaining claims in the complaint against all of the remaining defendants, save for the claims against KW and Friedkin. Those claims, negligence and some form of intentional tort, are now the subject of this motion for summary judgment and sanctions.

## II. Legal Standard

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. at 323. This is so that summary judgment can be used to dispose of claims and defenses which are factually unsupported. *Id.* at 324. The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. *Id.* The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250.

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. at 324. The nonmoving party must oppose a proper summary judgment motion "by any kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves ..." *Id.* Rule 56(c) states, "... [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." A scintilla of evidence in favor of the nonmoving party is not sufficient.

## III. Law and Analysis

### A. Duty

Defendants assert that both claims against them fail because neither owed any duty to McIver. In that regard, the parties agree that the existence of a duty to McIver is a required element of both his remaining claims. Accordingly, the Court will examine whether a duty exists from either remaining defendant.

1. <u>KW</u>

KW is the owner of the real property on which the car wash, the site of the incident, is located. In turn, KW leased the property to KW#1. The Ohio Supreme Court has explained possible liability under such a scenario as follows:

> In Ohio, the commercial lessor's liability is governed by traditional common law principles. Under the common law, one having neither possession nor control of premises is ordinarily not liable for damages resulting from the condition of the premises. The lessor who does not retain the right to admit or exclude others from the premises has generally not reserved the degree of possession or control necessary to impose liability for the condition of the premises.

*Hendrix v. Eighth & Walnut Corp.*, 1 Ohio St. 3d 205, 207 (1982).

In support of its motion, KW offered the declaration of Joshua Holm, president of the entity formerly known as KW. In his declaration, Holm stated: "Under this lease agreement, [KW] did not retain the authority to admit or exclude persons from the dealership premises, and, to my knowledge, the Company has never substantially exercised such authority." Doc. 133-5 at 2. In an attempt to avoid the result compelled by this declaration, McIver asserts that a four-factor test developed by Ohio's Eighth District Court of Appeals compels a different result. In *Collova v. Matousek*, 85 Ohio App.3d 440 (1993), the state appellate court listed four factors to be considered when evaluating whether a landlord retained the degree of control and possession over property to impose liability. Those factors are: (1) whether the landlord occupied some part of the property; (2) whether the landlord had the right to admit or exclude persons from the premises; (3) whether the lease delegates to the landlord responsibility for damages caused by the operations on the premises; and (4) whether the landlord participated in the problem which was responsible for the injuries for which recovery has been sought. *Id.* at 443.

While detailing these factors, McIver has offered no evidence in support of any of the factors. With respect to the first factor, McIver asserts: "factually, it cannot be determined with any certainty that KW Real Estate/Akron Co. did not occupy the premises." Doc. 135 at 9. McIver, however, offers *no evidence* in support of this contention. Instead, McIver attempts to argue that the relationship of the entities, KW and KW#1, somehow satisfies his burden. It does not. *See Monnin v. Fifth Third Bank of Miami Valley, N.A.*, 103 Ohio App. 3d 213, 222-23 (1995) (declining to impose liability on a related entity and noting that "[t]he quantum of control necessary for premises liability is one that is physical and actual, and not one that is merely legal or theoretical"). McIver's analysis of the final three factors suffers from the same shortcoming.

Namely, McIver offers *no* evidence in support of *any* of his assertions.  With respect to the second factor, McIver notes that the lease obligated KW to maintain and repair the premises.  McIver contends that this provision demonstrates an ability to admit and exclude people.  He offers no evidence that KW ever utilized this right to admit or exclude anyone, and McIver offers no law to suggest that the lease provision alone is sufficient to establish some form of control.

With respect to the third factor, McIver relies upon the same lease provision and cites the Court to a common pleas matter out of Franklin County, Ohio.  The Court's review of that case, *In re Estate of John Sayre v. Dominion Homes*, 2013 Ohio Misc. LEXIS 10589 (Franklin County Court of Common Pleas June 19, 2013), reveals that it involved a dispute between neighbors – an area of law entirely outside of the landlord-tenant context that is relevant herein.

McIver's argument on the fourth factor highlights perhaps the most significant flaw in his arguments.  In his brief, McIver argues: "The problem which was responsible for the injuries in this case was the construction of the car wash directly into a wall for a car dealership that sold cars with known unintended acceleration problems."  Doc. 135 at 10-11.  While that statement may accurately assert McIver's *theory* of liability, there is no evidence cited to support it in any manner.  Instead, McIver seeks to have the Court simply accept his theory of liability with no evidentiary support.

As demonstrated above, a review of the *Collova* factors does not assist McIver.  The record contains no evidence that creates a genuine issue of material fact with relation to whether KW owed McIver a duty.  Accordingly, summary judgment on both claims against KW is appropriate.

2. Friedkin

Friedkin is a shared services provide that offered payroll, legal, and other administrative services to KW#1, the operator of the carwash.  In support of its motion for summary judgment,

Friedkin offered the declaration of Maria Rivera, its Vice President. The declaration includes the following:

> 6. Friedkin played no part whatsoever in the design, purchase, construction, installation, and/ or maintenance or management of the subject carwash that Mr. McIver alleges in his Complaint contributed to his injury.
>
> 7. Moreover, Friedkin has never owned, controlled, maintained, managed, or possessed property or equipment at the Lexus of Akron/Canton dealership, including the subject carwash, nor the land on which the dealership is located.

Doc. 133-4 at 2. Similar to his opposition above, McIver offers *no* evidence in support of his opposition to Friedkin. Instead, McIver states in conclusory fashion:

> Friedkin Companies did exercise some degree of control over the design and construction process. Friedkin Companies negotiated the design build contracts on behalf of KW Real Estate/Akron Company and had knowledge over the design. Friedkin Companies had financial control over the project. The exact nature and extent of the work Friedkin Companies actually performs remains somewhat murky, but the evidence does show that Friedkin Companies provides legal advice and financial services to numerous Lexus dealerships, and knew or should have known of the sudden acceleration problems of the vehicles it was selling and servicing. Friedkin Companies had direct knowledge of the design and construction of the addition and car wash and exercised at least some control over the actual construction of the addition and car wash.

Doc. 135 at 12. While these statements directly contradict Rivera's declaration, they are wholly unsupported by any evidence in the record. As such, they are insufficient to generate a genuine issue of material fact. Instead, Rivera's declaration stands undisputed and compels a conclusion that Friedkin owed no duty to McIver. As such, McIver's claims against Friedkin cannot survive summary judgment.

**IV. Sanctions**

"A motion for sanctions must be made *separately* from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed.R. Civ.P. 11(c)(2) (emphasis added). As Defendants' motion for sanctions was not filed separately, it is hereby DENIED WITHOUT

PREJUDICE. *See, e.g., Voice Systems Marketing Co., L.P. v. Appropriate Technology Corp.* 153 F.R.D. 117, 120 (E.D.Mich. 1994)(" Because defendants' motion for sanctions was included in their motion to dismiss, the court will deny defendants' motion for sanctions as it is not in compliance with Rule 11."); *Bazner v. Owens-Corning Fiberglas Corp.*, 172 F.3d 47 (6th Cir. 1999) (reaching the same result when applying the similarly word Fed.R. App. P. 38).[1]

### IV. Conclusion

Defendants' motion for summary judgment is GRANTED. Defendants' motion for sanctions is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Date: March 14, 2019          */s/ John R Adams*
                              JOHN R. ADAMS
                              U.S. DISTRICT JUDGE

---

[1] While the Court recognizes the motion for sanctions may be refiled, the Court is hopeful that this order on summary judgment will bring the matter to a full and final resolution at all levels.